UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven A. Sather and Kathleen M. Sather,

Plaintiffs,

v.

Civ. No. 01-1370 (JNE/JGL)
ORDER

Steven J. Weintraut and Siegel, Brill, Greupner, Duffy & Foster, P.A.,

Defendants.

---

Eric L. Crandall, Esq., appeared for Plaintiffs Steven A. Sather and Kathleen M. Sather.

Thomas E. Propson, Esq., Meagher & Geer, P.L.L.P., appeared for Defendants Steven J. Weintraut and Siegel, Brill, Greupner, Duffy & Foster, P.A.

---

This is an action by two consumers, Steven and Kathleen Sather, under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681u (2000) (FCRA or Act). The Sathers claim that a lawyer, Steven Weintraut, and his law firm, Siegel, Brill, Greupner, Duffy & Foster, P.A. (collectively, Defendants), violated the FCRA by obtaining and using their credit reports without a permissible purpose. The case is before the Court on Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

Kathleen Sather is the sole shareholder of Sather Design/Build, Inc. (SDBI), a corporation engaged in the business or remodeling houses. Her husband, Steven Sather, is either

FILED JUL 1 0 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

an employee or a consultant of the corporation.[1] Keith and Linda Wanke hired SDBI to construct a family room at their residence in 1998. The project was not completed to the satisfaction of the Wankes, who eventually sued SDBI in Minnesota state court. The Sathers were initially named as defendants as well, but they were later dismissed from the case. In 2000, the Wankes obtained a judgment against SDBI.

After trying without success to collect the judgment, Weintraut, who had served as the Wankes' counsel during the state-court litigation, submitted an application to the Minnesota contractor's recovery fund. *See* Minn. Stat. § 326.975 (2002).[2] The application included the Sathers' credit reports, which Weintraut had obtained from Metro Legal Services, Inc. It appears that the credit reports were also filed in state court and disseminated to others. After SDBI satisfied the state-court judgment, the Sathers brought this action against Defendants, alleging violations of the FCRA.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

---

1 According to Kathleen Sather, her husband is an employee of SDBI. Steven Sather disagrees, insisting that he is a consultant. This dispute of fact is not material to the issues raised by Defendants' motion.

2 An owner of residential property who obtains a judgment against a licensed residential building contractor or residential remodeler can recover from the fund under the circumstances specified in the statute. *See* Minn. Stat. § 326.975, subd. 1(2).

317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The FCRA is directed primarily at regulating the conduct of consumer reporting agencies. Its purpose is to require agencies to adopt reasonable procedures for meeting commercial needs for consumer credit, personnel, insurance, and other information in a manner that is fair and equitable to consumers with regard to the confidentiality, accuracy, relevancy, and proper utilization of the information. 15 U.S.C. § 1681(b). To ensure the confidentiality and proper utilization of consumer information, the FCRA sets forth an exclusive list of circumstances under which agencies are permitted to furnish "consumer reports."[3] *Id.* § 1681b(a). A companion provision, section 1681b(f), imposes restrictions on persons seeking to obtain or use consumer reports. Section 1681b(f) provides:

> A person shall not use or obtain a consumer report for any purpose unless—
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under [section 1681b(a)]; and
>
> (2) the purpose is certified . . . by [the] prospective user of the report through a general or specific certification.

In addition, the Act prohibits "natural person[s]" from "obtaining a consumer report under false pretenses or knowingly without a permissible purpose." *Id.* § 1681n(a)(1)(B).

---

[3] The parties do not dispute that the Sathers' credit reports are "consumer reports" within the meaning of the Act. *See* 15 U.S.C. § 1681a(d).

The FCRA authorizes consumers to bring a civil action against any person who fails to comply with the Act's requirements. *Id.* § 1681p. The remedies available to the consumer vary based on the nature of the violation. Whereas a *willful* violation can give rise to liability for actual damages or statutory damages, as well as punitive damages, costs, and reasonable attorneys' fees, *id.* § 1681n(a), a violation that is merely *negligent* results in liability only for actual damages, costs, and fees, *id.* § 1681*o*.

In this case, the Sathers allege that Defendants obtained and used their credit reports without a permissible purpose, in violation of sections 1681b(f), 1681n(a) (willful violations), and 1681*o* (negligent violations), and that Weintraut obtained the reports under false pretenses or knowingly without a permissible purpose, in violation of section 1681n(a)(1)(B). The Sathers also assert a violation of section 1681q, a criminal provision that applies to "any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." "Although at one time it made sense to refer to a civil [FCRA] claim . . . as arising under section 1681q, amendments to the statute in 1996," which added sections 1681b(f) and 1681n(a)(1)(B), "open a more straightforward path to civil liability for the same conduct." *Phillips v. Grendahl*, 312 F.3d 357, 363 (8th Cir. 2002); *see* Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009 (1996). In light of the 1996 amendments, the Sathers' reliance on section 1681q as a source of civil liability is "anachronistic and unnecessary." *Phillips*, 312 F.3d at 364.

**A. Permissible purpose**

To succeed on their claims, the Sathers must demonstrate, *inter alia*, that Defendants lacked a permissible purpose for obtaining and using their consumer reports. *See Phillips*, 312 F.3d at 364. Defendants assert they obtained and used the reports as part of their efforts to

collection the Wankes' judgment against SDBI, a purpose they argue is permitted by sections 1681b(a)(3)(A) and 1681b(a)(3)(F)(i). The Court will consider each section in turn.

*1. Section 1681b(a)(3)(A)*

Section 1681b(a)(3)(A) authorizes consumer reporting agencies to release a consumer report to a person if it has reason to believe that the person "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving *the . . . review or collection of an account of . . . the consumer*." (Emphasis added.) The emphasized language requires identity between the person whose account is to be reviewed or collected and the subject of the consumer report. Although Defendants argue otherwise, the cases on which they rely support this interpretation. For example, in *Allen v. Kirkland & Ellis*, No. 91 C 8271, 1992 WL 206285 (N.D. Ill. Aug. 17, 1992), a law firm requested a consumer's credit report in preparation for litigation regarding a debt allegedly owed *by the consumer* as the sole shareholder of a corporation that was his alter ego. *Id.* at *2. Similarly, in *Korotki v. Attorney Services Corp.*, 931 F. Supp. 1269 (D. Md. 1996), *aff'd*, 131 F.3d 135 (4th Cir. 1997), the person who requested the consumer's credit report had reason to believe that *the consumer* owed him a debt. 931 F. Supp. at 1277.[4]

Defendants here sought to collect a judgment against SDBI, but they obtained and used the Sathers' consumer reports. Neither Kathleen Sather, as the owner of the corporation, nor Steven Sather, as either an employee or consultant of the corporation, were personally liable for the judgment. Thus, the judgment against SDBI was not "an account of the [Sathers]", and

[4] *Allen* and *Korotki* were decided before the effective date of the 1996 amendments to the FCRA. Prior to those amendments, the current section 1681b(a)(3)(A) was numbered section 1681b(3)(A).

section 1681b(a)(3)(A) does not apply. The Court therefore denies Defendants' motion insofar as it is based on section 1681b(a)(3)(A).

2. *Section 1681b(a)(3)(F)(i)*

Under section 1681b(a)(3)(F)(i), an agency can furnish a report to a person if it has reason to believe the person "has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer." The Eighth Circuit has held that this provision requires a "business transaction [relating] to 'a consumer relationship between the party requesting the report and the subject of the report' regarding credit, insurance eligibility, employment, or licensing." *Bakker v. McKinnon*, 152 F.3d 1007, 1012 (8th Cir. 1998) (quoting *Houghton v. N.J. Mfrs. Ins. Co.*, 795 F.2d 1144, 1149 (3d Cir. 1986)).[5] In this case, as in *Bakker*, Defendants and the Sathers "were not involved in any consumer transaction involving the extension of credit, insurance, employment, or licensing." *See id.* "Thus, no consumer relationship existed between [Defendants], the party requesting the reports, and [the Sathers], the subjects of the reports, and [section 1681b(a)(3)(F)(i)] d[oes] not apply." *See Bakker*, 152 F.3d at 1012. The Court therefore denies Defendants' motion insofar as it is based on that section.

**B. Willfulness**

Defendants' next argument is that the evidence in the record is insufficient to support a finding that they willfully failed to comply with the FCRA. As discussed, only willful violations can give rise to liability for statutory and punitive damages. *See* 15 U.S.C. § 1681n(a). The Act's "use of the word 'willfully' imports the requirement that the defendant knows his or her conduct is unlawful." *Phillips*, 312 F.3d at 368. Thus, to show willful noncompliance, the

---

5 *Bakker* was also decided under the pre-1996 version of the Act. Under that version, the current section 1681b(a)(3)(F)(i) was numbered section 1681b(3)(E). There is a slight variation in language between the current and pre-1996 version, but that variation is not relevant here.

Sathers must demonstrate that Defendants knowingly and intentionally committed an act Defendants knew was not permitted by the FCRA. *Phillips*, 312 F.3d at 370; *Bakker*, 152 F.3d at 1013 (stating willful noncompliance requires showing that defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others") (internal quotation marks omitted). The Sathers need not establish, however, that Defendants acted with "malice or evil motive." *Phillips*, 312 F.3d at 368; *Bakker*, 152 F.3d at 1013.

Defendants do not dispute that they knowingly and intentionally obtained and used the Sathers' consumer reports. The question is whether they knew that those acts violated the FCRA. The only evidence cited by the parties on this point is the Consumer Credit Report Request completed by Weintraut in May 2000. In the request, Weintraut certified that he had reviewed the FCRA, and that his request for the Sathers' credit reports was "in full compliance with the express terms" of the Act. Weintraut also indicated that the information would be "used in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the review or collection of an account of the consumer," and for no other purpose. This language tracks section 1681b(a)(3)(A).

Taking the request at face value, a rational finder of fact could find that Weintraut believed he was requesting the reports for the purpose authorized by section 1681b(a)(3)(A). On the other hand, as discussed above, this case does not fit within that section because the judgment against SDBI was not "an account of the [Sathers]." Given Weintraut's legal experience and the elementary nature of the principle that a corporation's shareholders and employees are not personally responsible for the corporation's debts, it would be reasonable to infer that Weintraut knew that he lacked a permissible purpose for requesting the reports. *See Phillips*, 312 F.3d at 371 (stating "evidence that defendants had some experience in dealing with credit reports and

either knew of the [FCRA] or at least knew that such reports can only be obtained legally under certain circumstances" can support inference that defendants knew their acts were impermissible); *Duncan v. Handmaker*, 149 F.3d 424, 429 (6th Cir. 1998) (stating fact that defendants were lawyers could suggest they knowingly obtained a consumer report for an impermissible purpose). Accordingly, the Court concludes that there is a genuine issue of material fact as to whether Defendants willfully failed to comply with the FCRA.[6]

**C. Actual damages**

Defendants' final argument is that the Sathers cannot establish that they have suffered any actual damages as a result of their conduct. Specifically, Defendants cite the lack of evidence supporting the Sathers' claims for damages based on loss of business and reputation, impairment of access to credit, and emotional distress. Defendants have properly supported their motion on these points, and the Sathers have failed to sustain their burden of submitting evidentiary materials that "designate specific facts showing that there is a genuine issue for trial." *See Matsushita*, 475 U.S. at 587; Fed. R. Civ. P. 56(e). The Court therefore grants Defendants' motion on the issue of actual damages.

---

[6] Defendants argue that they are entitled to summary judgment as to their liability for statutory and punitive damages. In light of the Court's conclusion on the issue of willfulness, a ruling regarding statutory and punitive damages would be premature.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 34] is GRANTED IN PART and DENIED IN PART.

Dated: July 10, 2003

JOAN N. ERICKSEN
United States District Judge