**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: 01-CV-1370 (JNE/JGL)**

| | |
|---|---|
| Steven Sather and Kathleen Sather,<br><br>Plaintiffs,<br><br>v.<br><br>Steven J. Weintraut and Siegel, Brill, Greupner, Duffy and Foster, P.A., a Minnesota corporation,<br><br>Defendants. | **PROPOSED SPECIAL VERDICT FORM** |

**(QUESTIONS REGARDING DEFENDANT WEINTRAUT OBTAINING PLAINTIFF STEVEN SATHER'S CONSUMER CREDIT REPORTS)**

1. Did Defendant Weintraut violate the Fair Credit Reporting Act when he obtained Plaintiff Steven Sather's consumer credit report on May 5, 2005?

   Yes __X____ No__________

2. Did Defendant Weintraut willfully commit an act he knew violated the Fair Credit Reporting Act related to illegally obtaining Plaintiff Steven Sather's consumer credit report on May 5, 2005?

   Yes _________ No__________

   [*If the answer to this question is "No," skip to question 4. If the answer is "Yes," answer question 3.*]

3. What amount will punish Defendant Weintraut for his violation of the Fair Credit Reporting Act related to obtaining Plaintiff Steven Sather's consumer credit report on May 5, 2005?

   $___________________

**(QUESTIONS REGARDING DEFENDANT WEINTRAUT OBTAINING PLAINTIFF KATHLEEN SATHER'S CONSUMER CREDIT REPORTS)**

4. Did Defendant Weintraut violate the Fair Credit Reporting Act when he obtained Plaintiff

Kathleen Sather's consumer credit report on May 5, 2005?

Yes __X_____ No__________

5. Did Defendant Weintraut willfully commit an act he knew violated the Fair Credit Reporting Act related to illegally obtaining Plaintiff Kathleen Sather consumer credit report on May 5, 2005?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 7. If the answer is "Yes," answer question 6.*]

6. What amount will punish Defendant Weintraut for his violation of the Fair Credit Reporting Act related to obtaining Plaintiff Kathleen Sather's consumer credit report on May 5, 2005?

$___________________

**(QUESTIONS REGARDING DEFENDANT SIEGEL BRILL LAWFIRM'S OBTAINING PLAINTIFF STEVEN SATHER'S CONSUMER CREDIT REPORTS)**

7. Did Defendant Siegel Brill violate the Fair Credit Reporting Act when it obtained Plaintiff Steven Sather's consumer credit report on May 5, 2005?

Yes __X_____ No__________

8. Did Defendant Siegel Brill willfully commit an act it knew violated the Fair Credit Reporting Act related to illegally obtaining Plaintiff Steven Sather's consumer credit report on May 5, 2005?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 11. If the answer is "Yes," answer question 9 and 10.*]

9. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$___________________

10. What amount will punish Defendant Siegel Brill Law firm for its violation of the Fair Credit Reporting Act related to obtaining Plaintiff Steven Sather's consumer credit report on May 5, 2005?

$___________________

**(QUESTIONS REGARDING DEFENDANT SIEGEL BRILL LAWFIRM'S OBTAINING PLAINTIFF KATHLEEN SATHER'S CONSUMER CREDIT REPORTS)**

11. Did Defendant Siegel Brill Law firm violate the Fair Credit Reporting Act when it obtained Plaintiff Kathleen Sather's consumer credit report on May 5, 2005?

Yes __X_____ No__________

12. Did Defendant Siegel Brill Law firm willfully commit an act it knew violated the Fair Credit Reporting Act related to illegally obtaining Plaintiff Kathleen Sather consumer credit report on May 5, 2005?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 15. If the answer is "Yes," answer question 13 and 14.*]

13. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$_________________

14. What amount will punish Defendant Siegel Brill Law firm for its violation of the Fair Credit Reporting Act related to obtaining Plaintiff Kathleen Sather's consumer credit report on May 5, 2005?

$___________________

**(QUESTIONS REGARDING DEFENDANT WEINTRAUT'S USING OF PLAINTIFF STEVEN SATHER'S CONSUMER CREDIT REPORT)**

15. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes __X_____ No__________

16. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 18. If the answer is "Yes," answer question 17.*]

17. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to the Hennepin County District Court?

$__________________

18. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Department of Commerce?

Yes __X____ No_________

19. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Department of Commerce?

Yes ________ No_________

20. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to the Minnesota Department of Commerce?

$__________________

21. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to John Markve, Esq.?

Yes __X____ No_________

22. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to John Markve, Esq.?

Yes ________ No_________

[*If the answer to this question is "No," skip to question 24. If the answer is "Yes," answer question 23.*]

23. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to John Markve, Esq.?

$__________________

24. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes __X____ No_________

25. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes ________ No_________

[*If the answer to this question is "No," skip to question 27. If the answer is "Yes," answer question 26.*]

26. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to Judge McKinsey?

$__________________

27. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Meagher & Geer law firm for use in Plaintiffs depositions?

Yes __X____ No_________

28. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Meagher & Geer law firm?

Yes ________ No_________

[*If the answer to this question is "No," skip to question 30. If the answer is "Yes," answer question 29.*]

29. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to the Meagher & Geer law firm?

$__________________

30. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes __X____ No_________

31. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 33. If the answer is "Yes," answer question 32.*]

32. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to the Minnesota Secretary of State?

$___________________

33. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes __X_____ No__________

34. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 36. If the answer is "Yes," answer question 35.*]

35. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to Linda Wanke?

$___________________

36. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes __X_____ No__________

37. Was Defendant Weintraut's action willful when he used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 39. If the answer is "Yes," answer question 38.*]

38. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Steven Sather's consumer credit report by sending it to Keith Wanke?

$__________________

**(QUESTIONS REGARDING DEFENDANT WEINTRAUT'S USING OF PLAINTIFF KATHLEEN SATHER'S CONSUMER CREDIT REPORT)**

39. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes __X_____ No__________

40. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 42. If the answer is "Yes," answer question 41.*]

41. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by sending it to the Hennepin County District Court?

$__________________

42. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Department of Commerce?

Yes __X_____ No__________

43. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Department of Commerce?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 45. If the answer is "Yes," answer question 44.*]

44. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by

sending it to the Minnesota Department of Commerce?

$__________________

45. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to John Markve, Esq.?

Yes __X_____ No__________

46. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the law firm Hellmuth & Johnson?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 48. If the answer is "Yes," answer question 47.*]

47. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by sending it to John Markve, Esq.?

$__________________

48. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes __X_____ No__________

49. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 51. If the answer is "Yes," answer question 50.*]

50. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by sending it to Judge McKinsey?

$__________________

51. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Meagher &

Geer law firm for use in Plaintiffs depositions?

Yes __X____ No________

52. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Meagher & Geer?

Yes ________ No________

[*If the answer to this question is "No," skip to question 54. If the answer is "Yes," answer question 53.*]

53. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by sending it to the Meagher & Geer law firm?

$________________

54. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes __X____ No________

55. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes ________ No________

[*If the answer to this question is "No," skip to question 57. If the answer is "Yes," answer question 56.*]

56. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by sending it to the Minnesota Secretary of State?

$________________

57. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes __X____ No________

58. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 60. If the answer is "Yes," answer question 59.*]

59. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by sending it to Linda Wanke?

$__________________

60. Did Defendant Weintraut violate the Fair Credit Reporting Act when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes __X_____ No__________

61. Was Defendant Weintraut's action willful when he used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 63. If the answer is "Yes," answer question 62.*]

62. What amount will punish Defendant Weintraut for his willful violation of the Fair Credit Reporting Act related to his using Plaintiff Kathleen Sather's consumer credit report by sending it to Keith Wanke?

$__________________

**(QUESTIONS REGARDING DEFENDANT SIEGEL BRILL LAWFIRM'S USING OF PLAINTIFF STEVEN SATHER'S CONSUMER CREDIT REPORT)**

63. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes __X_____ No__________

64. Was Defendant Siegel, Brill, Greupner, and Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 67. If the answer is "Yes," answer question 65 and 66.*]

65. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$__________________

66. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to the Hennepin County District Court?

$__________________

67. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Department of Commerce?

Yes __X_____ No__________

68. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Department of Commerce?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 71. If the answer is "Yes," answer question 69 and 70.*]

69. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$__________________

70. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to the Minnesota Department of Commerce?

$__________________

71. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to John Markve, Esq.?

Yes __X_____ No__________

72. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to John Markve, Esq.?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 75. If the answer is "Yes," answer question 73 and 74.]*

73. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to John Markve, Esq.?

$___________________

74. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$____________________

75. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes __X_____ No__________

76. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 79. If the answer is "Yes," answer question 77 and 78.*]

77. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$____________________

78. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to Judge McKinsey?

$__________________

79. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to sent it to the Meagher & Geer law firm for use in Plaintiffs depositions?

Yes __X_____ No__________

80. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Meagher & Geer law firm for use in Plaintiffs depositions?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 83. If the answer is "Yes," answer question 81 and 82.*]

81. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$____________________

82. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to the Meagher & Geer law firm?

$__________________

83. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes __X_____ No__________

84. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 87. If the answer is "Yes," answer question 85 and 86.*]

85. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$____________________

86. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to the Minnesota Secretary of State?

$__________________

87. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes __X_____ No__________

88. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 91. If the answer is "Yes," answer question 89 and 90.*]

89. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$__________________

90. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to Linda Wanke?

$__________________

91. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes __X_____ No__________

92. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Steven Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 95. If the answer is "Yes," answer question 93 and 94.*]

93. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$__________________

94. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Steven Sather's consumer credit report by sending it to Keith Wanke?

$__________________

**(QUESTIONS REGARDING DEFENDANT SIEGEL BRILL LAWFIRM'S USING OF PLAINTIFF KETHLEEN SATHER'S CONSUMER CREDIT REPORT)**

95. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes __X____ No__________

96. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Hennepin County District Court?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 99. If the answer is "Yes," answer question 97 and 98.*]

97. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$________________

98. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's consumer credit report by sending it to the Hennepin County District Court?

$__________________

99. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24,

2000, and sent it to the Minnesota Department of Commerce?

Yes __X____ No_________

100. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Department of Commerce?

Yes ________ No_________

[*If the answer to this question is "No," skip to question 103. If the answer is "Yes," answer question 101 and 102.*]

101. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$_________________

102. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's consumer credit report by sending it to the Minnesota Department of Commerce?

$_________________

103. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to John Markve, Esq.?

Yes __X____ No_________

104. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to John Markve, Esq.?

Yes ________ No_________

[*If the answer to this question is "No," skip to question 107. If the answer is "Yes," answer question 105 and 106.*]

105. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$________________

106. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's

consumer credit report by sending it to John Markve, Esq.?

$__________________

107. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes __X_____ No__________

108. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Judge McKinsey?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 111. If the answer is "Yes," answer question 109 and 110.*]

109. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$__________________

110. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's consumer credit report by sending it to Judge McKinsey?

$__________________

111. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Meagher & Geer law firm for use in Plaintiffs' depositions?

Yes __X_____ No__________

112. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to M&G?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 115. If the answer is "Yes," answer question 113 and 114.*]

113. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the

willful violation described in the preceding question?

$__________________

114. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's consumer credit report by sending it to the Meagher & Geer law firm?

$__________________

115. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes __X_____ No__________

116. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to the Minnesota Secretary of State?

Yes _________ No__________

[*If the answer to this question is "No," skip to question 119. If the answer is "Yes," answer question 117 and 118.*]

117. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$____________________

118. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's consumer credit report by sending it to the Minnesota Secretary of State?

$__________________

119. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes __X_____ No__________

120. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Linda Wanke?

Yes ________ No__________

[*If the answer to this question is "No," skip to question 123. If the answer is "Yes," answer question 121 and 122.*]

121. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$___________________

122. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's consumer credit report by sending it to Linda Wanke?

$___________________

123. Did Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. violate the Fair Credit Reporting Act when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes __X_____ No__________

124. Was Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A.'s action willful when it used Plaintiff Kathleen Sather's consumer credit report on August 24, 2000, and sent it to Keith Wanke?

Yes ________ No__________

[*If the answer to this question is "No," then you are done answering questions. If the answer is "Yes," answer question 125.*]

125. What amount between $100 and $1000 will compensate Plaintiff Steven Sather for the willful violation described in the preceding question?

$______________________

126. What amount will punish Defendant Siegel, Brill, Greupner, Duffy & Foster, P.A. for its willful violation of the Fair Credit Reporting Act related to using Plaintiff Kathleen Sather's consumer credit report by sending it to Keith Wanke?

$___________________

[*Please have the presiding juror sign and date this form.*]

Presiding Juror: ___________________________________ Date:__________________